# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL SANCHEZ ZAVALA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HECTOR RIOS, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:09-cv-00679-SKO PC<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT, WITH LEAVE TO FILE SECOND AMENDED COMPLAINT WITHIN THIRTY (30) DAYS<br><br>(Doc. # 10) |

Plaintiff Raul Sanchez Zavala ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), which provides a remedy for civil rights violations committed by federal actors. Plaintiff is incarcerated at the U.S. Penitentiary in Atwater, California ("USP-Atwater"). Plaintiff names Hector Rios (current warden), Dennis Smith (former warden), Mr. Bell (assistant warden), Ms. Gonzaga (former mailroom staff), Mr. Martinez (mailroom staff), Mr. Luke (mailroom staff), Mr. Capel (mailroom staff), Mr. Bucio (mailroom staff), Mr. Fisher (mailroom staff), Mr. Liwag (counselor), Mr. Coggins (counselor), Mr. Van Horn (counselor), Ms. Capel (counselor), Mr. Silva (counselor), Mr. Reyes (counselor), "Unknown A" (unit manager), "Unknown B" (unit manager), Robert E. McFadden (regional director), Harrell Watts (Bureau of Prisons Administrator for National Inmate Appeals), and the United States Department of Justice, Bureau of Prisons as defendants. For the reasons set forth below, the Court finds that Plaintiff's first amended complaint fails to state any cognizable claims. Accordingly, Plaintiff's first amended complaint will be dismissed, with leave to file a second amended complaint.

I.      **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

II.     **Background**

Plaintiff claims that officials at USP-Atwater interfered with Plaintiff's mail. Plaintiff's allegations concern two separate incidents. In the first incident, Plaintiff complains that USP-Atwater officials interfered with Plaintiff's criminal appeal by not allowing Plaintiff to call his

///

attorney and by rejecting mail from Plaintiff's attorney. In the second incident, Plaintiff complains that officials rejected a package from Plaintiff's trial attorney containing legal documents.

### 1. Plaintiff's Criminal Appeal

On September 12, 2006, Plaintiff arrived at USP-Atwater. (Compl. ¶ 30.) Sometime in late September or early October, Plaintiff called his attorney, Karen Lindholdt. (Compl. ¶ 31.) Lindholdt told Plaintiff that she did not want to speak with Plaintiff over a monitored telephone and instructed Plaintiff to schedule a "legal call" through his correctional counselor. (Compl. ¶¶ 32-33.) On September 26, 2006, Plaintiff requested to be scheduled for a legal call. (Compl. ¶ 35.) Plaintiff's request was denied on September 27, 2006 by Defendant Ms. Capel. (Compl. ¶ 35.)

In late September 2006, Lindholdt filed Plaintiff's first criminal appeal with the Ninth Circuit. (Compl. ¶ 37.) Lindholt also mailed a copy of the appeal to Plaintiff. (Compl. ¶ 38.) On October 18, 2006, Plaintiff wrote a letter to Lindholdt, but did not receive a response. (Compl. ¶ 36.) Plaintiff mailed a second letter to Lindholdt on October 25, 2006. (Compl. ¶ 39.) Plaintiff also made another request for a legal call. (Compl. ¶ 40.) On October 27, 2006, Defendant Silva denied Plaintiff's request for a legal call. (Compl. ¶ 41.) Plaintiff wrote a third letter to Lindholdt on October 31, 2006, but received no response. (Compl. ¶ 42.) On November 19, 2006, Plaintiff requested another legal call which was denied by Ms. Capel on November 20, 2006. (Compl. ¶ 43.) Plaintiff sent another "cop-out"[1] to Silva on December 17, 2006, but did not receive a response. (Compl. ¶ 44.)

In early December 2006, Plaintiff received two priority legal mail envelopes from Lindholdt that had been opened. (Compl. ¶ 45.) The envelopes contained a letter dated November 22, 2006. (Doc. ¶ 46.) Plaintiff mailed a letter back to Lindholdt on December 26, 2006. (Compl. ¶ 48.) On January 2, 2007, Plaintiff mailed a letter to the Ninth Circuit complaining that his legal and confidential mail had been opened. (Compl. ¶ 48.) The opened mail contained a letter from Lindholdt and copies of briefs filed in the Ninth Circuit concerning Plaintiff's criminal appeal.

---

[1] Plaintiff does not explain what a "cop-out" is and the Court is unfamiliar with the terminology. Based on the context of Plaintiff's allegations, it appears that a "cop-out" is a form used to file requests with USP-Atwater officials, such as requests to make legal calls.

3

(Compl. ¶ 49.) The letter stated that Lindholdt had mailed the briefs to Plaintiff previously, but they were returned because the box that was sent was too heavy under prison standards. (Compl. ¶ 50.)

Plaintiff complains that after he reviewed the appellate briefs, he noticed several factual deficiencies and inaccuracies. (Compl. ¶ 52.) Plaintiff complains that his input during the appeal process was crucial because Lindholdt was not present during Plaintiff's trial and the trial transcripts were inaccurate. (Compl. ¶ 52.) Plaintiff further complains that because the brief had already been filed, Plaintiff was unable to file a supplemental brief. (Compl. ¶ 54.) Plaintiff mailed another letter to Lindholdt on January 8, 2007. (Compl. ¶ 55.) Plaintiff also attempted to file an amended brief with the Ninth Circuit, but the Ninth Circuit did not consider Plaintiff's amended brief. (Compl. ¶ 56.)

On February 15, 2007, Plaintiff began inquiring about USP-Atwater's mailroom policy by sending a "cop-out" to the mail room. (Compl. ¶ 57.) On March 8, 2007, Plaintiff send a cop-out to Defendant Ms. Gonzaga asking whether any of Plaintiff's mail had been rejected. (Compl. ¶ 58.) Plaintiff received a response that stated that Plaintiff is not entitled to notice when his mail is rejected. (Compl. ¶ 58.) Plaintiff send another cop-out on April 6, 2007 and received a response that stated that no mail rejections had been found. (Compl. ¶ 59.) On April 26, 2007, Plaintiff sent a cop-out to Defendant Dennis Smith but did not receive a response. (Compl. ¶ 60.) Plaintiff filed an "Informal Resolution Form" (also known as a "BP8") on May 10, 2007. (Compl. ¶¶ 61-62.) Plaintiff filed cop-outs requesting a status update on his BP8 but did not receive any responses. (Compl. ¶¶ 63-64.) On June 22, 2007, Defendant Reyes and "Unknown A" denied Plaintiff's BP8. (Compl. ¶ 65.) On July 1, 2007, Plaintiff filed a cop-out for a BP9[2] because "Plaintiff's request for a BP9 was intentionally slow walked by USP Atwater staff."[3] (Compl. ¶ 66.) Plaintiff filed a BP9 on July 6, 2007. (Compl. ¶ 67.) Smith denied Plaintiff's BP9 on July 27, 2007. (Compl. ¶ 68.) Plaintiff filed a BP10 on August 12, 2007, which was denied on August 30, 2007 by Defendant

---

[2] Plaintiff does not explain what a BP9 is. Based on the context of Plaintiff's allegations and the Court's prior experience, BP9 is an administrative appeal. The Court presumes that BP8 through BP11 refers to the hierarchy of administrative appeals, BP11 being the highest level of appeal referred to in Plaintiff's complaint.

[3] Plaintiff does not explain what "intentionally slow walked" means and the Court is unaware of what it means.

McFadden. (Compl. ¶¶ 69-70.) Plaintiff filed a BP11 on September 21, 2007 which was denied by Defendant Watts on November 28, 2007. (Compl. ¶¶ 71-72.)

### 2. Plaintiff's Pre-trial and Trial Case File

Plaintiff complains that Defendants interfered with the delivery of a package from Plaintiff's trial attorney that contained pre-trial and trial documents. On October 10, 2007, Plaintiff gave Defendant Gonzaga an "Authorization to Receive Package" form. (Compl. ¶ 74.) Gonzaga told Plaintiff that he did not need an authorization form, laughed at Plaintiff, and refused to give Plaintiff the form back. (Compl. ¶ 74.) Plaintiff sent a cop-out to Defendants Smith and Gonzaga on October 10, 2007. (Compl. ¶ 75.) On October 12, 2007, Plaintiff mailed a letter to his trial attorney, Mr. Cikutovich, asking for his pre-trial and trial case file. (Compl. ¶ 76.) Plaintiff received responses from Gonzaga and Smith that reiterated the prison's policy that legal mail packages do not need to be pre-approved and Plaintiff did not need to fill out an authorization form before hand. (Compl. ¶¶ 78-79, Ex. FF.) Plaintiff filed a motion with the United States District Court for the Eastern District of Washington asking the Court to compel Mr. Cikutovich to release Plaintiff's trial court file. (Compl. ¶ 80.) Plaintiff also requested a legal phone call with Defendants Spencer and Reyes but did not receive a response. (Compl. ¶ 81.)

Around March 2008, Plaintiff noticed that his name was on the "Receiving and Departure" ("R&D") department's "call-out list." (Compl. ¶¶ 82-84.) Plaintiff went to the R&D department expecting to receive a package. (Compl. ¶¶ 84-85.) However, when Plaintiff arrived, the officer told Plaintiff that it was a mistake and Plaintiff was told to return to his "unit." (Compl. ¶ 86.)

On May 19, 2008, Plaintiff received an order from the Eastern District of Washington requesting Mr. Cikutovich to respond to Plaintiff's motion within 20 days. (Compl. ¶¶ 87-90.) When Plaintiff did not hear back within the deadline, he wrote multiple letters to the Eastern District of Washington complaining about the lack of a response. (Compl. ¶¶ 91-95.) On July 16, 2008, Plaintiff received a response from the Eastern District of Washington denying Plaintiff's motion as moot. (Compl. ¶¶ 96-97.) The court stated that "Defendant's failure to receive the requested material does not appear to be related to anything his former attorney has done or failed to do." (Compl. ¶ 97.) Plaintiff later learned that Mr. Cikutovich mailed the trial court documents to

5

Plaintiff on February 19, 2008. (Compl. ¶ 104.) The documents were returned to Mr. Cikutovich marked "Receiver Did Not Want" and "Package Authorization Not on File." (Compl. ¶ 105.) Cikutovich attempted to call USP-Atwater several times and was told to leave a message with Plaintiff's counselor, but did not receive any responses. (Compl. ¶ 106.)

Plaintiff directed a BP8, a BP9, and a BP10 to Defendants VanHorn, "Unknown B," Smith, Bell, and McFadden, which were denied. (Compl. ¶¶ 109-119.) Plaintiff directed cop-outs to Jesse Gonzalez and Defendant Van Horn which were ignored. (Compl. ¶¶ 112-117.) Plaintiff's motion for reconsideration with the Eastern District of Washington was denied sometime around November 26, 2008. (Compl. ¶ 120.) Plaintiff sent a cop-out to Defendant Liwag complaining about the mail rejections, but was told that "Plaintiff did not have any BP 328 forms on file."[4] (Compl. ¶¶ 120-121.) Plaintiff filed a BP11 with Defendant Watts that was denied on July 8, 2009. (Compl. ¶¶ 123, 126.)

Plaintiff learned that the staff in the mailroom included J. Lopez (not named as a defendant), as well as Defendants R. Martinez and M. Bucio. (Compl. ¶ 128.)

**III.   Discussion**

    **A.   Access to Courts Claims**

Plaintiff claims that Defendants interfered with Plaintiff's constitutional right of access to the courts. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348. When raising an access to courts claim seeking relief for a lost

---

[4]Plaintiff provides no explanation regarding what "BP 328 forms" are.

opportunity to present a legal claim or relief from an unfavorable outcome in a prior legal claim, a plaintiff must show 1) the loss of a nonfrivolous or arguable claim; 2) the defendant's acts frustrating the litigation; and 3) that the relief sought is unobtainable in any presently existing suit. Christopher v. Harbury, 536 U.S. 403, 413-416 (2002).

### 1.     Loss of a Nonfrivolous or Arguable Claim

Plaintiff has not established that he has suffered an "actual injury," or the loss of a nonfrivolous or arguable claim. Plaintiff's allegations imply that he suffered some sort of prejudice with respect to his criminal appeal. Plaintiff has not alleged that his appeal was dismissed or denied, and has, therefore, failed to specifically identify any prejudice he has suffered. Further, Plaintiff fails to establish that any prejudice he suffered resulted in the loss of a nonfrivolous or arguable claim. In order to meet the pleading standard for raising an access to courts claim, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued. . . ." Christopher v. Harbury, 536 U.S. 403, 417 (2002). Thus, in order to establish that the underlying claim was nonfrivolous or arguable, Plaintiff must state the underlying claim within his complaint and Plaintiff's description of the underlying claim must meet Rule 8 pleading standards. Plaintiff has not sufficiently described the underlying claim--he only alleges that it was an appeal of his criminal conviction. Accordingly, Plaintiff has failed to establish the loss of a nonfrivolous or arguable claim.

### 2.     Defendants' Acts Frustrating the Litigation

Plaintiff also fails to show how Defendants' actions frustrated Plaintiff's litigation. There is no indication that Plaintiff's inability to call his lawyer or Plaintiff's inability to receive his legal documents had any bearing on the outcome of the appeal. Even assuming that Plaintiff's criminal appeal was dismissed, Plaintiff does not explain how his inability to call his lawyer or his inability to receive his legal documents affected the outcome of his appeal. Plaintiff does not allege the grounds on which his criminal appeal was dismissed. Although Plaintiff alleges that the inability to communicate with Lindholdt resulted in Lindholdt filing an appeal brief that contained factual inaccuracies, there is no allegation that the factual inaccuracies were material. In Plaintiff's letter to Lindholdt, which is incorporated into Plaintiff's complaint by reference, Plaintiff identifies some

of the factual inaccuracies. Plaintiff points out that Lindholdt made a reference to methamphetamine when it should have been cocaine. (Compl. Ex. O.) Plaintiff also claims that some of the cases cited in the government's brief were not similar to Plaintiff's situation because, among other reasons, they involved different types of crimes. (Compl. Ex. O.) It is unclear how these "inaccuracies" materially impacted the outcome of Plaintiff's criminal appeal.

With respect to Plaintiff's inability to call Lindholdt, Plaintiff has not demonstrated that Defendants interfered with Plaintiff's phone calls. Plaintiff claims that USP-Atwater officials rejected Plaintiff's requests to schedule a legal call with Lindholdt. However, the exhibits attached to Plaintiff's complaint, incorporated into Plaintiff's complaint by reference, reveal that USP-Atwater's policy for arranging legal calls between inmates and attorneys require that the attorney initiate the request by calling the institution and arranging a time with Plaintiff's case manager. (Compl. Ex. H.) Plaintiff makes no mention of any attempt by Lindholdt to comply with prison regulations by calling USP-Atwater to arrange a legal call. Plaintiff only alleges that he requested legal calls, which does not appear to be the proper procedure for scheduling legal calls that were subsequently denied. Thus, there is no indication that Plaintiff's inability to contact his attorney was due to interference by USP-Atwater officials. The Court also notes that while Plaintiff identifies discrete instances when USP-Atwater officials denied <u>some</u> of Plaintiff's requests to make legal calls to his attorney, there is no allegation that <u>every</u> request to make a call to his attorney was denied, and that Plaintiff was completely unable to contact Lindholt.

Plaintiff also contends that Defendants interfered with Plaintiff's access to the courts by rejecting a package containing legal documents from Lindholdt and a second package containing legal documents from Plaintiff's trial attorney, Cikutovich. However, it is unclear how Defendants interfered with Plaintiff's ability to receive his legal documents. Plaintiff claims that Defendant Gonzaga did not allow Plaintiff to submit an "Authorization to Receive Package" form for the second package because Gonzaga told Plaintiff that he did not need to fill out an authorization form. Plaintiff's complaint appears to be that USP-Atwater officials interfered with Plaintiff's ability to receive his legal documents because he was not allowed to file the necessary forms to authorize his package from Cikutovich and his package was rejected as unauthorized. However, the exhibits

attached to Plaintiff's complaint show that USP-Atwater officials notified Plaintiff multiple times that, although legal documents are automatically authorized by BOP policy and do not have to be pre-approved, those packages must be marked with words such as "Authorized by Bureau Policy" to alert mail room staff that the enclosed materials are authorized. (Compl. Ex. AA, CC, EE, FF, TT, WW.) Plaintiff was advised by USP-Atwater officials to contact the sender to ensure that they follow the necessary procedures for mailing legal documents to Plaintiff. (Compl. Ex. EE.) In one instance, a notification emphasized the need to label packages as "Authorized by Bureau Policy" by underlining the relevant policy language, implying that Plaintiff's packages were rejected because of the sender's failure to label them properly. (Compl. Ex. FF.) Plaintiff does not allege that his packages were properly labeled, or that he made any effort to inform Lindholdt or Cikutovich about the proper procedures for sending Plaintiff his legal documents. Plaintiff presents no argument that the prison's policy requiring that legal document packages be properly labeled constitutes an unconstitutional burden on Plaintiff's access to the courts. Accordingly, Plaintiff has not demonstrated that Defendants interfered with Plaintiff's constitutional right of access to the courts.

### 3. Relief Sought is Unobtainable in any Presently Existing Suit

The Court also notes that Plaintiff has not established that the relief he seeks is not obtainable in any presently existing suit. Since the outcome of Plaintiff's criminal appeal is unclear, the Court cannot evaluate whether Plaintiff's concerns regarding the outcome of his appeal can be addressed via appeal or via habeas corpus proceedings. Accordingly, Plaintiff fails to state any cognizable claim based on the interference with his constitutional right of access to the courts.

### B. Attorney Client Privilege Claims

Plaintiff claims that his rights under the Sixth Amendment were violated when Defendants opened mail containing privileged information from his attorney. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." Clutchette v. Rushen, 770 F.2d 1469, 1471 (9th Cir. 1985). "In some situations, however, government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights." Id. "Such an intrusion violates the Sixth Amendment only when it substantially prejudices the defendant." Id. "In order to show that the government's alleged

intrusion into the attorney-client relationship amounted to a violation of the Sixth Amendment, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, <u>or</u> that the intrusion resulted in tainted evidence." <u>U.S. v. Fernandez</u>, 388 F.3d 1199, 1240 (9th Cir. 2004) (citing <u>United States v. Danielson</u>, 325 F.3d 1054, 1067 (9th Cir. 2003)) (emphasis in original).  Plaintiff's complaint fails to demonstrate any of these elements.

### 1. **Purposeful Intrusion**

Plaintiff has not alleged any facts that suggest that the opening of Plaintiff's mail was a purposeful intrusion into the attorney-client relationship. Even assuming that USP-Atwater officials knew that Lindholdt was Plaintiff's attorney and was representing Plaintiff in a criminal appeal, Plaintiff has not alleged any facts that suggest that Plaintiff's mail was opened for the purpose of gaining access to privileged information, as opposed to being opened to search for contraband. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 553-555 (1979) (recognizing legitimate penological interest in controlling contraband within the prison).

### 2. **Communication of Defense Strategy**

Plaintiff has not alleged that the opened mail contained defense strategy or contained any information of significance to the prosecution/government.  As an initial matter, Plaintiff has not alleged that any of the information contained in the opened mail was communicated to the prosecution.  Further, Plaintiff has not alleged that the mail contained any matters of substance. Plaintiff alleges that the opened mail contained a letter from Lindholdt as well as copies of briefs filed with the Ninth Circuit.  The briefs did not contain any privileged information, as they were filed in the Ninth Circuit and were matters of public record.  Mail from the courts is not treated as "legal mail" and is not afforded constitutional protection beyond that which is provided for all types of incoming mail because such mail is a public document that the government already has access to. <u>Keenan v. Hall</u>, 83 F.3d 1083, 1094 (9th Cir. 1996).  Based on this same reasoning, mail containing briefs filed with a court is not "legal mail" and the attorney-client relationship is not breached when the government opens mail to an inmate containing such briefs.  The government

///

already has access to all the information contained in the briefs; thus there has been no communication of privileged defense strategy.

Plaintiff has also failed to show that the letter written by Lindholdt contained any privileged information regarding defense strategy. Plaintiff has alleged the contents of the letter both directly in his complaint and by incorporating the letter to the complaint by reference. The contents of the letter are mundane. Lindholdt informs Plaintiff that the attached briefs were filed, and that Lindholdt's previous attempts to send Plaintiff the briefs failed because the box that was sent was returned to Lindholdt. (Compl. Ex. F.) Lindholdt also mentions being confused about Plaintiff's complaints about misunderstandings between Lindholdt and Plaintiff and that Lindholdt felt that she could write the appeal without further assistance from Plaintiff. (Compl. Ex. F.) Lindholdt also informed Plaintiff that many of the grievances that Plaintiff wished to pursue must be addressed in a separate 28 U.S.C. § 2255 claim. (Compl. Ex. F.) The letter does not go into any more detail regarding any of Plaintiff's claims. Accordingly, The Court finds that there was no communication of privileged defense strategy to the government.

### 3. Tainted Evidence

Plaintiff has not alleged that the opening of Plaintiff's mail led to the presentation of tainted evidence in Plaintiff's criminal appeal.

Taking into account all three factors, Plaintiff fails to state a cognizable claim for the interference with the attorney-client relationship in violation of the Sixth Amendment.

### C.   Free Speech Claims

The Court construes Plaintiff's claims based on his inability to communicate with his attorneys as arising under the First Amendment right to freedom of speech. "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context . . . some rights are simply inconsistent with the status of a prison or 'with the legitimate penological objectives of the corrections system'". Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "[W]hen a prison regulation impinges on inmates' [First Amendment] rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley,

482 U.S. 78, 89 (1987). Under this standard, four factors are relevant: (1) there must be a valid rational connection between the prison regulation and the legitimate and neutral governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right available to inmates; (3) what impact the accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the allocation of prison resources generally and the absence of ready alternatives available to the prison for achieving the governmental objectives. Shaw, 532 U.S. at 229-30.

### 1.   **Outgoing Mail/Telephone Calls**

Plaintiff's complaint fails to state a cognizable free speech claim based on his inability to arrange a legal phone call with Lindholdt and Cikutovich. Although Defendants' conduct may have interfered with Plaintiff's ability to communicate with his attorneys in a confidential setting, Defendants' conduct did not interfere with Plaintiff's ability to communicate with Lindholdt or Cikutovich. Whether or not Plaintiff's constitutional rights were infringed because he was unable to make confidential communications with his attorneys is a question more properly addressed under an access to courts or Sixth Amendment theory. See discussion, supra, Part III.A, B. Plaintiff has not demonstrated that Defendants' conduct infringed on Plaintiff's free speech rights, which protect Plaintiff's ability to communicate, by any means, with Lindholdt or Cikutovich. Plaintiff's complaint demonstrates that he was able to communicate with his attorneys by phone and mail. Accordingly, Plaintiff fails to state a claim for a violation of his free speech rights under the First Amendment.

### 2.   **Incoming Mail**

Plaintiff claims that Defendants interfered with the delivery of Plaintiff's incoming mail. Plaintiff's claims are based on (1) Defendants opening Plaintiff's legal mail, and (2) Defendants rejecting the packages containing legal documents on two separate occasions.

Plaintiff does not state any cognizable claims based on Defendants opening Plaintiff's mail from Lindholdt. While prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam), Defendants' actions in opening Plaintiff's incoming mail does not clearly infringe upon any First Amendment right. The First

Amendment protects against the censorship of incoming inmate mail when not necessary to protect legitimate governmental interests. Wolff v. McDonnell, 418 U.S. 539, 575 (1974). However, the situation here is not the equivalent of censorship. See id. ("freedom from censorship is not equivalent to freedom from inspection or perusal"). Plaintiff does not allege any facts that suggest that opening his incoming mail from Lindholdt chilled the exercise of his free speech rights.

Plaintiff also claims that he was unable to receive documents from his trial attorney, Cikutovich, because the prison returned the package containing them to the sender. A package containing legal documents from Lindholdt was also rejected on one occasion. Plaintiff was able to receive the package when Lindholdt made a second attempt to send it. However, it is difficult to evaluate Plaintiff's First Amendment claims because Plaintiff does not clearly identify the conduct committed by Defendants that he is challenging. It is unclear whether Plaintiff's First Amendment claims are based on a facial challenge of the prison regulations governing the processing of his incoming mail, or whether Plaintiff is challenging the conduct of individual USP-Atwater officials that were not undertaken pursuant to regulations. Plaintiff merely alleges that he was unable to receive certain packages and concludes that his First Amendment rights were violated.

To the extent that Plaintiff is challenging the conduct of individual USP-Atwater officials, Plaintiff's claims fail. Plaintiff's complaint fails to identify any specific actions by specific individuals that interfered with Plaintiff's constitutional right to receive mail. For example, Plaintiff's sole allegation against Defendants R. Martinez and M. Bucio is that they worked in the mailroom. (Compl. ¶ 128.) Plaintiff does not allege that they were working on the day Plaintiff's package arrived, or that they had anything to do with the handling of Plaintiff's package. The Court is unable to evaluate whether or not their actions were constitutional if Plaintiff offers no allegations as to what their actions were. Plaintiff complains that Defendant Gonzaga took Plaintiff's "Authorization to Receive Package" form and refused to give it back. Plaintiff fails to explain how this resulted in Plaintiff being unable to receive his packages. Gonzaga told Plaintiff that he did not need an authorization form to receive legal materials, and nothing in the complaint suggests that Gonzaga's statement was false. Plaintiff complains that he filed numerous administrative appeals (cop-outs, BP8s, BP9s, etc.) regarding his mail that were ignored or denied. However, these

complaints were filed after Plaintiff's packages were rejected. A prison official who denies an administrative complaint regarding a constitutional violation that has already occurred is not liable for that underlying constitutional violation merely because the complaint is denied or ignored. The official cannot be said to have caused a constitutional violation that occurred in the past.

Plaintiff's complaint suggests that the reason that he was unable to receive his packages was because (1) the package from Lindholdt was too heavy by prison standards and rejected, and (2) the package from Cikutovich was not properly labeled as "authorized" as required by prison regulations.[5] However, Plaintiff makes no claim that the prison regulations governing the weight and labeling of packages, on their face, are unconstitutional burdens on Plaintiff's First Amendment right to receive mail. Plaintiff does not allege that these regulations are not related to legitimate penological interests or that there are no alternative means of exercising Plaintiff's right to receive mail.[6] Thus, the Court will not construe Plaintiff's First Amendment claims as a facial challenge against the prison mail regulations. To the extent that Plaintiff wishes to raise a facial challenge to the USP-Atwater mail regulations, Plaintiff will be given an opportunity to file an amended complaint that clearly identifies the conduct being challenged.

**D.     18 U.S.C. § 242**

Plaintiff claims that Defendants violated 18 U.S.C. § 242. Section 242 provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both. . . .

---

[5] Plaintiff does not specifically allege that his package from Cikutovich was rejected because it was improperly labeled. Plaintiff does not allege one way or another whether the package was properly labeled, as required by prison regulations. However, the exhibits attached to Plaintiff's complaint suggest that Plaintiff's package was not labeled properly. See discussion supra Part III.A.2.

[6] The Court notes that there appears to be ample alternative means of exercising Plaintiff's right to receive mail. Plaintiff could simply instruct the senders to comply with the relevant prison regulations so that the packages would not be rejected. The regulations do not appear to be overly burdensome, as demonstrated by Lindholdt's ability to re-send Plaintiff's package in a manner that complied with prison regulations.

18 U.S.C. § 242. Section 242 is a penal statute. Whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the discretion of the prosecutor, not the court. United States v. Batchelder, 442 U.S. 114, 124 (1979); see Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375 (2d Cir. 1973) (prosecution of state officials for alleged violation of inmates' federal civil rights is for discretion of U.S. Attorney). Criminal statutes generally do not provide a private cause of action or a basis for civil liability. See, e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241, 242 provide no private right of action and cannot form basis for civil suit); Pawelek v. Paramount Studios Corp., 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (no private cause of action inherent in federal criminal statutes defining civil rights violations). The Ninth Circuit has specifically found that 18 U.S.C. § 242 provides no basis for civil liability. Aldabe, 616 F.2d at 1092. Accordingly, Plaintiff may not sue Defendants in a civil action for a violation of 18 U.S.C. § 242.

### E.     Intentional Infliction of Emotional Distress

Plaintiff's remaining cause of action is for the intentional infliction of emotional distress, a cause of action that arises out of California state law. Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) plaintiff suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003) (citing Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991)) (quotations omitted). In addition to the requirement that the conduct be intentional and outrageous, the conduct "must also 'be directed at plaintiff, or occur in the presence of a plaintiff of whom defendant is aware.'" Id., at 622 (quoting Christensen, 54 Cal.3d at 903).

Plaintiff does not explicitly identify what conduct by Defendants was "extreme and outrageous," and the Court finds that none of the conduct alleged can be characterized as "extreme and outrageous." Additionally, the facts do not suggest that Defendants intended to cause (or were

///

recklessly disregarding the probability of causing) emotional distress. Accordingly, Plaintiff fails to state any cognizable claims for the intentional infliction of emotional distress.

### F. Claims Against the Bureau of Prisons

Plaintiff names the Bureau of Prisons as a defendant. Actions under Bivens may only be raised against individuals--Plaintiff may not sue a federal agency under Bivens. Correctional Services Corp. v. Malesko, 534 U.S. 61, 69-71 (2001). Thus, Plaintiff's claims against the Bureau or Prisons are not cognizable.

### IV. Conclusion and Order

The Court has screened Plaintiff's first amended complaint and finds that it does not state any claims upon which relief may be granted pursuant to Bivens.[7] The Court will provide Plaintiff with the opportunity to file a second amended complaint curing the deficiencies identified by the court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff elects to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference pursuant to Federal Rule of Civil Procedure 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary to submit evidence to prove the allegations in Plaintiff's complaint because at this stage, Plaintiff's factual allegations will be accepted as true.

However, although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

---

[7] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. Plaintiff is cautioned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend, for failure to state a claim;

2. The Clerk's Office shall send Plaintiff a complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint;

4. Plaintiff may not add any new, unrelated claims to this action via his second amended complaint, and any attempt to do so will result in an order striking the unrelated claim in the second amended complaint; and

5. If Plaintiff fails to file a second amended complaint, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

**Dated:   May 10, 2010**                              **/s/ Sheila K. Oberto**
                                                       UNITED STATES MAGISTRATE JUDGE